SHEARMAN & STERLING LLP
Douglas P. Bartner
Robert A. Britton
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-4000

*Attorneys for the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x

| | | |
|---|---|---|
| **In re** | : | **Chapter 15** |
| | : | |
| **CENTRAIS ELÉTRICAS DO PARÁ S.A. – *EM RECUPERAÇÃO JUDICIAL*,** [1] | : | **Case No. 12-14568 (__)** |
| | : | |
| **Debtor in a Foreign Proceeding.** | : | |
| | : | |

---------------------------------------------------------------- x

## FOREIGN REPRESENTATIVE'S MOTION FOR ORDER GRANTING RELIEF IN AID OF FOREIGN PROCEEDING

---

[1]    The last four digits of the Debtor's Brazilian Corporate Taxpayer Registration Number are 01-80. The Debtor's executive headquarters is located at Rodovia Augusto Montenegro s/n, Km 8,5 – CEP 68823-010, Belém, Pará, Brazil.

# TABLE OF CONTENTS

**Page**

Table of Contents ................................................................**Error! Bookmark not defined.**

Table of Authorities ..........................................................**Error! Bookmark not defined.**

Introduction ........................................................................................................................4

Jurisdiction and Venue........................................................................................................5

Background ..........................................................................................................................5

Relief Requested ..................................................................................................................6

Basis for Relief ....................................................................................................................7

A.     The Brazilian Proceeding Is Entitled to Recognition as a Foreign Main Proceeding ........7

  1.     The Court Has Jurisdiction to Recognize the Brazilian Proceeding and Grant the
      Relief Requested ........................................................................................................7

  2.     This Case Is Proper Under Chapter 15 ......................................................................8

     (a)     The Brazilian Proceeding Is a "Foreign Proceeding" ....................................8

     (b)     Mauro Chaves de Almeida Is a Proper "Foreign Representative"...............10

     (c)     The Foreign Representative Properly Filed this Case ..................................10

     (d)     The Petition for Recognition Is Consistent with the Purpose of Chapter 15 .............11

  3.     The Brazilian Proceeding Is a "Foreign Main Proceeding" Under
      Sections 1502(4) and 1517(b)(1) of the Bankruptcy Code ................................11

B.     Specific Request for Relief Pursuant to Sections 1507 and 1521 of the Bankruptcy
    Code Is Warranted and Appropriate ................................................................................14

C.     Recognizing the Brazilian Proceeding As a Foreign Main Proceeding and Granting
    the Other Relief Requested Herein Is Consistent with the Purpose of Chapter 15 and
    United States Public Policy................................................................................................19

    Notice..................................................................................................................................22

    No Prior Request.................................................................................................................22

    Conclusion ..........................................................................................................................23

# TABLE OF AUTHORITIES

## CASES

*Canada S. Ry. Co. v. Gebhard*, 109 U.S. 527, 539 (1883) ................................................15

*Cornfeld v. Investors Overseas Servs., Ltd.*, 471 F. Supp. 1255 (S.D.N.Y. 1979) ........................16

*Cunard S.S. Co. Ltd. v. Salen Reefer Servs. A.B.*, 773 F.2d 452 (2d Cir. 1985)............................14

*In re Banco Nacional de Obras y Servicios Publicos S.N.C.*, 91 B.R. 661 (Bankr.
S.D.N.Y. 1988) ................................................................................................14

*In re Banco Santos, S.A.*, No. 10-47543 (Bankr. S.D. Fla Jan. 13, 2011) .......................................6

*In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R.
122 (Bankr. S.D.N.Y. 2007), aff'd, 389 B.R. 325 (S.D.N.Y. 2008)............................7, 8, 9

*In re Bird*, 222 B.R. 229 (Bankr. S.D.N.Y. 1998) ..........................................................14

*In re Enco Zolcsak Equipamentos Industriais Ltda.*, No. 11-22924 (Bankr. S.D. Fla.
July 12, 2011)......................................................................................................6

*In re Fairfield Sentry Ltd.*, 440 B.R. 60 (Bankr. S.D.N.Y. 2010) ..................................................10

*In re Fazendas Reunidas Boi Gordo, S.A.*, No. 09-37116 (Bankr. S.D. Fla. Jan. 11, 2010) ...........6

*In re Gercke*, 122 B.R. 621 (Bankr. D.D.C. 1991) .........................................................15

*In re ITSA Intercontinental Telecomunicaes Ltda.*, No. 08-13927 (Bankr. S.D.N.Y.
Jan. 29, 2009)......................................................................................................6

*In re Independncia S.A.*, No. 09-10903 (Bankr. S.D.N.Y. Mar. 26, 2009) ....................................6

*In re Ionosphere Clubs, Inc.*, 922 F.2d 984 (2d Cir. 1990) ..........................................................16

*In re Lines*, 81 B.R. 267 (Bankr. S.D.N.Y. 1988)........................................................14

*In re MMG LLC*, 256 B.R. 544 (Bankr. S.D.N.Y. 2000)............................................................15

*In re Rubin*, 160 B.R. 269 (Bankr. S.D.N.Y. 1993)........................................................14

*In re SPhinX, Ltd.*, 351 B.R. 103 (Bankr. S.D.N.Y. 2006)..............................................9

*In re Transbrasil S.A. Linhas Areas*, No. 11-19484 (Bankr. S.D. Fla. May 11, 2011) ..................6

*In re Tri-Continental Exch. Ltd.*, 349 B.R. 627 (Bankr. E.D. Cal. 2006).......................................10

*In re Varig Logstica S.A.*, No. 09-15717 (Bankr. S.D. Fla. May 11, 2009) ....................................6

*NextG Networks of N.Y., Inc. v. City of New York*, 2006 WL 538189 (S.D.N.Y. Mar. 6, 2006) ....................................................................................................................14

*Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709 (2d Cir. 1987)................................14

## STATUTES

11 U.S.C. § 101(23) ....................................................................................................................5

11 U.S.C. § 101(24) ....................................................................................................................7

11 U.S.C. § 1501 ....................................................................................................................4, 17

11 U.S.C. § 1501(a)(3) ....................................................................................................................8

11 U.S.C. § 1501(b)(1) ....................................................................................................................5, 8

11 U.S.C. § 1504 ....................................................................................................................2

11 U.S.C. § 1506 ....................................................................................................................16

11 U.S.C. § 1507(a) ....................................................................................................................11

11 U.S.C. § 1515 ....................................................................................................................2

11 U.S.C. § 1516(c) ....................................................................................................................8

11 U.S.C. § 1517 ....................................................................................................................8, 10

11 U.S.C. § 1517(b)(1) ....................................................................................................................17

11 U.S.C. § 1520 ....................................................................................................................11

11 U.S.C. § 1521(a) ....................................................................................................................11

11 U.S.C. § 1521(e) ....................................................................................................................13

28 U.S.C. § 1410 ....................................................................................................................2

28 U.S.C. § 1410(1) ....................................................................................................................5

28 U.S.C. § 1410(3) ....................................................................................................................5

28 U.S.C. § 157 ....................................................................................................................2, 4

28 U.S.C. § 157(b)(2)(P) ....................................................................................................................2, 4

28 U.S.C. § 1334 ....................................................................................................................2, 4

## Introduction

Mauro Chaves de Almeida, in his capacity as the authorized foreign representative (the "**Foreign Representative**") for Centrais Elétricas do Pará S.A. – *em recuperação judicial* (the "**Debtor**") in connection with the ongoing case of judicial reorganization number 0005939-47.2012.814.0301 (the "**Brazilian Proceeding**") commenced in the Federative Republic of Brazil pursuant to Federal Law 11.101 of February 9, 2005 (the "**Bankruptcy and Business Recovery Law**") pending before the Thirteenth Civil Court of Belém, State of Pará (the "**Brazilian Court**"), respectfully submits this motion (this "**Motion**"), pursuant to sections 1504, 1507, 1509, 1517, 1520, 1521, and 105(a) of title 11 of the United States Code, as amended from time to time (the "**Bankruptcy Code**"), for entry of an order, after notice and a hearing (the "**Order**"), (a) granting the verified petition in this case and recognizing the Brazilian Proceeding as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code, (b) giving full force and effect in the United States to the Brazilian Court's [Order] dated as of September 4, 2012 (the "**Plan Approval Order**") and the *Plan of Reorganization of Centrais Elétricas do Pará S.A. – em recuperação judicial* dated as of May 4, 2012 (as it may be extended or modified by, or with consent of, the Brazilian Court, the "**Brazilian Plan**"), which was approved by the Plan Approval Order; (c) permanently enjoining all parties from commencing or taking any action in the United States to obtain possession of, exercise control over, or assert claims against the Debtor or its property, (d) authorizing and directing the Depository Trust Company (the "**DTC**") and The Bank of New York Mellon, in its capacity as Indenture Trustee (the "**Trustee**") under that certain Indenture dated as of June 3, 2011 (the "**Indenture**") relating to the issuance of the Debtor's US$250,000,000 10.50% Notes due 2016 (the "**Unsecured Notes**"), to take any and all ministerial actions necessary to give effect to the terms of the Brazilian Plan, (e) relieving the Trustee of any further obligations under

the Indenture, upon consummation of all actions required prior to and on the Date of Investment

(as defined in the Brazilian Plan and hereinafter, the "**Investment Date**") (including, but not

limited to the execution of a supplemental indenture), and (f) granting such other and further

relief as the Court deems just and proper.  In support of this Motion, the Foreign Representative

refers the Court to the statements contained in the *Declaration of Mauro Chaves de Almeida in*

*Support of (I) Verified Chapter 15 Petition, (II) Foreign Representative's Motion for Order*

*Granting Relief in Aid of Foreign Proceeding, and (III) Certain Related Relief*

(the "**Almeida Declaration**"), which was filed concurrently herewith and is incorporated herein

by reference.  In further support of the relief requested herein, the Foreign Representative

respectfully represents as follows:

<u>**Jurisdiction and Venue**</u>

1.      The Court has jurisdiction to consider this Motion pursuant to sections 157

and 1334 of title 28 of the United States Code, and the Amended Standing Order of Reference

from the United States District Court for the Southern District of New York dated as of

January 31, 2012.  This case has been properly commenced pursuant to section 1504 of the

Bankruptcy Code by the filing of a verified petition for recognition (the "**Petition for**

**Recognition**") of the Brazilian Proceeding pursuant to section 1515 of the Bankruptcy Code.

This is a core proceeding pursuant to section 157(b)(2)(P) of title 28 of the United States Code.

Venue is proper in this District pursuant to section 1410 of title 28 of the United States Code.

The statutory predicates for the relief requested herein are sections 1504, 1507, 1509, 1517,

1520, 1521, and 105 of the Bankruptcy Code.

<u>**Background**</u>

2.      The Debtor is an electricity distribution company operating in the State of

Pará, Brazil.  It was created in November 1962 by the government of the State of Pará to provide

electricity within that state.  The Debtor was privatized by the Brazilian government in July,

1998, and from that time, until November 1, 2012, it was a majority-owned indirect subsidiary of

Rede Energia S.A. ("**Rede**"), a Brazilian corporation that owns electricity distribution

subsidiaries which collectively provide electricity to more than 1,240,000 square kilometers,

covering all 143 municipalities in the State of Pará.  As described in the Almeida Declaration, on

November 1, 2012, Equatorial Energia S.A. ("**Equatorial**") completed the acquisition of Rede's

direct and indirect equity interests in the Debtor pursuant to the Brazilian Plan.  Equatorial is a

joint stock company organized under Brazilian law and headquartered in the city of São Luís,

State of Maranhão, Brazil.  Equatorial is a holding company whose subsidiaries are engaged in

the generation and distribution of electricity in the State of Maranhão, which is adjacent to the

State of Pará.

   3. On the date hereof (the "**Petition Date**"), the Foreign Representative

commenced this chapter 15 case by filing, among other things, a verified chapter 15 petition

seeking recognition of the Brazilian Proceeding as a foreign main proceeding under chapter 15 of

the Bankruptcy Code.

   4. Detailed information about the Debtor's business and operations, the

events leading to the Petition Date, and the facts and circumstances surrounding the Brazilian

Proceeding and this case is set forth in the Almeida Declaration.

**Relief Requested**

   5. By this Motion, the Foreign Representative seeks entry of the Order, after

notice and a hearing, (a) granting the verified petition in this case and recognizing the Brazilian

Proceeding as a foreign main proceeding pursuant to section 1517 of the Bankruptcy Code,

(b) giving full force and effect in the United States to the Brazilian Court's Plan Approval Order

and the Brazilian Plan, which was approved by the Plan Approval Order; (c) permanently

enjoining all parties from commencing or taking any action in the United States to obtain

possession of, exercise control over, or assert claims against the Debtor or its property,

(d) authorizing and directing the DTC and the Trustee to take any and all ministerial actions

necessary to give effect to the terms of the Brazilian Plan, (e) relieving the Trustee of any further

obligations under the Indenture  upon consummation of all actions required prior to and on the

Investment Date, and (f) granting such other and further relief as the Court deems just and

proper.

<u>**Basis for Relief**</u>

**A.  The Brazilian Proceeding Is Entitled to Recognition as a Foreign Main Proceeding**

        **1.**      **The Court Has Jurisdiction to Recognize the Brazilian Proceeding and Grant the Relief Requested**

        6.      The Court has jurisdiction to hear and determine cases commenced under

the Bankruptcy Code and all core proceedings arising thereunder pursuant to 28 U.S.C. §§ 157

and 1334 and section 1501 of the Bankruptcy Code, as well as the Amended Standing Order of

Reference from the United States District Court for the Southern District of New York dated as

of January 31, 2012.  A case under chapter 15 is a "case" under the Bankruptcy Code.

Recognition of foreign proceedings and other matters under chapter 15 of the Bankruptcy Code

have expressly been designated as core proceedings pursuant to 28 U.S.C. § 157(b)(2)(P).

        7.      Furthermore, venue is proper in this District.  The Debtor has no

employees, operations, or real property in the United States, and is not party to any lawsuits in

the United States.  The Debtor has no United States affiliates or equity-holders.  The Debtor's

principal connection to the United States is that it issued the Unsecured Notes pursuant to the

Indenture, which is governed by New York law.  Other than holders of the Unsecured Notes,

many of whom are sophisticated financial institutions with headquarters in New York, the

Debtor is not aware of any creditors residing in the United States.  The Debtor's only asset in the

United States is an interest in cash held in a New York based bank account.  Because of the

proximity of its United States creditors and United States counsel to the Court, the existence of

the New York law governed Unsecured Notes, the fact that the Debtor's only

United States-based asset is located in New York, and the fact that the Debtor is not party to any

litigation in any United States jurisdiction, the Debtor believes that the interests of justice will be

served by establishing venue in this District.  Accordingly, it is respectfully submitted that venue

in this District is consistent with the interests of justice and the convenience of the parties and is

proper pursuant to 28 U.S.C. §§ 1410(1) and (3).

        **2.**      **This Case Is Proper Under Chapter 15**

        8.      Chapter 15 of the Bankruptcy Code applies where a foreign representative

seeks the assistance of a United States bankruptcy court in connection with a foreign proceeding.

11 U.S.C. § 1501(b)(1).  The Debtor's case is proper under chapter 15 because (a) it concerns a

"foreign proceeding," (b) it was commenced by the Foreign Representative, a duly authorized

"foreign representative," (c) the Petition for Recognition and all required supporting

documentation were properly filed, and (d) the relief sought by the Petition for Recognition is

consistent with the objectives of chapter 15.

        (a)     **The Brazilian Proceeding Is a "Foreign Proceeding"**

        9.      Section 101(23) of the Bankruptcy Code defines a "foreign proceeding"

as:

> a collective judicial or administrative proceeding in a foreign country,
> including an interim proceeding, under a law relating to insolvency or
> adjustment of debt in which proceeding the assets and affairs of the debtor
> are subject to control or supervision by a foreign court, for the purpose of
> reorganization or liquidation.

11 U.S.C. § 101(23).

10.     The Brazilian Proceeding fits squarely within the Bankruptcy Code's definition of a "foreign proceeding" as it is an insolvency action brought under the Bankruptcy and Business Recovery Law and supervised by the Brazilian Court.  The Bankruptcy and Business Recovery Law and other Brazilian insolvency laws provide for controlled, collective reorganizations and capital restructuring procedures designed to enable financially distressed companies to avoid foreclosure or seizure of assets while maximizing going concern value for the benefit of all of their creditors and other parties in interest.  *See, e.g., In re Independência S.A.*, No. 09-10903 (Bankr. S.D.N.Y. Mar. 26, 2009) (recognizing, as a foreign main proceeding, a case filed pursuant to the in-court reorganization section of the Bankruptcy and Business Recovery Law); *In re Varig Logística S.A.*, No. 09-15717 (Bankr. S.D. Fla. May 11, 2009) (same); *see also In re ITSA Intercontinental Telecomunicações Ltda.*, No. 08-13927 (Bankr. S.D.N.Y. Jan. 29, 2009) (recognition of a foreign Brazilian proceeding that confirmed a pre-negotiated plan of reorganization); *In re Enco Zolcsak Equipamentos Industriais Ltda.*, No. 11-22924 (Bankr. S.D. Fla. July 12, 2011); *In re Transbrasil S.A. Linhas Aéreas*, No. 11-19484 (Bankr. S.D. Fla. May 11, 2011); *In re Banco Santos, S.A.*, No. 10-47543 (Bankr. S.D. Fla. Jan. 13, 2011); *In re Fazendas Reunidas Boi Gordo, S.A.*, No. 09-37116 (Bankr. S.D. Fla. Jan. 11, 2010).  Pursuant to the Bankruptcy and Business Recovery Law, the Debtors have obtained from the Brazilian Court an Interlocutory Decision, dated February 29, 2012, authorizing the commencement of the Brazilian Proceeding, a certified copy of which is attached to the Almeida Declaration as Exhibit B.  The Debtors have also obtained from the Brazilian Court the Plan Approval Order, a certified copy of which is attached to the Almeida Declaration as Exhibit F.

(b)     **Mauro Chaves de Almeida Is a Proper "Foreign Representative"**

11.     Section 101(24) of the Bankruptcy Code provides that:

> The term "foreign representative" means a person or body, including a person or body appointed on an interim basis, authorized in a foreign proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding.

11 U.S.C. § 101(24).

12.     On November 6, 2012, the Brazilian Court entered an order (the "**Foreign Representative Order**"), which (among other things) approved Mauro Chaves de Almeida, an individual person, to serve as the Debtor's foreign representative in this chapter 15 case.  A certified copy of the Foreign Representative Order is attached to the Almeida Declaration as Exhibit J.

13.     Accordingly, Mauro Chaves de Almeida is a "foreign representative" as defined in the Bankruptcy Code.

(c)     **The Foreign Representative Properly Filed this Case**

14.     This case was duly and properly commenced as required by sections 1504 and 1509(a) of the Bankruptcy Code by the filing of the Petition for Recognition pursuant to section 1515(a) of the Bankruptcy Code, which was accompanied by all documents and information required by sections 1515(b) and (c).  *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 127 (Bankr. S.D.N.Y. 2007) ("A case under chapter 15 is commenced by a foreign representative filing a petition for recognition of a foreign proceeding under section 1515 of the Bankruptcy Code"), *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008).

Because the Foreign Representative has satisfied the requirements set forth in section 1515 of the

Bankruptcy Code, these cases have been properly commenced.

(d)     **The Petition for Recognition Is Consistent with the Purpose of Chapter 15**

15.     One of the stated objectives of chapter 15 is the "fair and efficient

administration of cross-border insolvencies that protects the interests of all creditors, and other

interested entities, including the debtor." 11 U.S.C. § 1501(a)(3).  This case has been

commenced for the purpose of obtaining the assistance of the Court to ensure the effective and

economical administration and implementation of the Brazilian Proceeding and the Brazilian

Plan by, among other things, restricting the Debtor's creditors from taking certain actions in the

United States that would undermine the unified, collective, and equitable resolution of the

Debtors' liabilities in the Brazilian Proceeding.  As such, the Petition for Recognition is

consistent with the purpose of chapter 15 and the cross-border coordination it promotes.

**3.     The Brazilian Proceeding Is a "Foreign Main Proceeding" Under Sections 1502(4) and 1517(b)(1) of the Bankruptcy Code**

16.     The Foreign Representative respectfully submits that the Court should

grant recognition of the Brazilian Proceeding as a "foreign main proceeding" as defined in

section 1502(4) of the Bankruptcy Code.  The Bankruptcy Code provides that a foreign

proceeding is a "foreign main proceeding" if it is pending in the country where the debtor has the

center of its main interests.  11 U.S.C. § 1517(b)(1).  Absent evidence to the contrary, a debtor's

registered office is presumed to be the center of its main interests.  11 U.S.C. § 1516(c).  *See In

re Bear Stearns*, 374 B.R. at 127, 130.  The Debtor's registered office is located in the state of

Pará, Brazil.  Indeed, as described below, all of the Debtor's corporate business is conducted

from Brazil.  As such, Brazil is "ascertainable by third parties" as the Debtor's center of main

interests.  *Id*. at 129.  While the location of the debtor's registered office is indicative, many

other factors also weigh into the center of main interests analysis, including "the location of the

debtor's headquarters; the location of those who actually manage the debtor (which, conceivably

could be the headquarters of a holding company); the location of the debtor's primary assets; the

location of the majority of the debtor's creditors or of a majority of the creditors who would be

affected by the case; and/or the jurisdiction whose law would apply to most disputes." *Bear*

*Stearns*, 374 B.R. at 128 (citing *In re SPhinX, Ltd.*, 351 B.R. 103, 117 (Bankr. S.D.N.Y. 2006),

*aff'd*, 371 B.R. 10 (S.D.N.Y. July 5, 2007)).

17.     The center of main interests for the Debtor's enterprise is Belém, State of

Pará, Brazil.  The Debtor is operationally and functionally centered in the State of Pará, largely

organized under centralized senior management in the State of Pará, and subject to combined

cash management and accounting functions, all of which are based in the State of Pará.  Indeed,

among other connections to Brazil:

> (a)  all of the Debtor's operations are managed and directed from its head
> office in Belém, Brazil, and are carried out in the State of Pará;

> (b)  corporate governance for the Debtor is directed from São Paulo, Brazil;

> (c)  in-person meetings of the Debtor's Board of Directors are typically held in
> Belém, Brazil;

> (d)  a majority of the members of the Debtor's Board of Directors maintain
> their offices in Belém, Brazil;

> (e)  strategic and key operating decisions and key policy decisions for the
> Debtor are made by staff located in São Paulo, Brazil;

> (f)  the Debtor's corporate accounting, accounts payable, insurance
> procurement, accounts receivable, financial planning, internal auditing,
> marketing, treasury, real estate, research & development, and tax services
> are provided from Belém and São Paulo, Brazil;

> (g)  the Debtor's finance, legal, human resources, payroll, billing, freight
> management, procurement, and engineering services are carried out in
> Belém, and São Paulo, Brazil;

(h) the Debtor's cash management functions are maintained and directed from Belém, Brazil;

(i) key information technology and systems used by the Debtor are provided from Belém, Brazil;

(j) management and senior staff of the Debtor regularly attend meetings in Belém, Brazil;

(k) the chief executive officer that oversees financial management of the Debtor is based in São Paulo, Brazil;

(l) all capital expenditure decisions affecting the Debtor are managed in São Paulo, Brazil;

(m) the vast majority of the Debtor's creditors, both in number and amount, are located in Brazil; and

(n) all of the Debtor's equityholders, including an entity controlled by the Brazilian national government, are located in Brazil.

18.    Prior to its preparations for the commencement of this chapter 15 proceeding, the Debtor's only significant connection to the United States was the issuance of the Unsecured Notes under the Indenture and the existence of certain holders of the Unsecured Notes based in the United States.  Other than this chapter 15 proceeding and the Brazilian Proceeding, the Debtor is not subject to insolvency proceedings in any jurisdiction.

19.    Thus, based on the facts present in this case, the Foreign Representative respectfully submits that Belém, State of Pará, Brazil should be found to be the center of the Debtor's main interests.  *See In re Tri-Continental Exch. Ltd.*, 349 B.R. 627, 634 (Bankr. E.D. Cal. 2006) (noting that a debtor's center of main interests is the "place where the debtor conducts the administration of his interests on a regular basis and is therefore ascertainable by third parties"); *see also In re Fairfield Sentry Ltd.*, 440 B.R. 60, 63 (Bankr. S.D.N.Y. 2010). Accordingly, given that the Brazilian Proceeding is pending in the Debtor's center of main

interests, the Brazilian Proceeding should be recognized as a foreign main proceeding pursuant to section 1517(b)(1) of the Bankruptcy Code.

20.    An order recognizing a foreign proceeding shall be entered if all of the requirements for recognition have been met. 11 U.S.C. § 1517. As set forth above, the Brazilian Proceeding is a "foreign main proceeding" within the meaning of section 1502(4) of the Bankruptcy Code, the Foreign Representative qualifies as a "foreign representative" under the Bankruptcy Code, and the Petition for Recognition meets the requirements of Bankruptcy Code section 1515. Accordingly, based on the submissions contained herein and in the Almeida Declaration, pursuant to section 1517(a) of the Bankruptcy Code, the Foreign Representative respectfully submits that he is entitled to entry of an order granting recognition of the Brazilian Proceeding.

**B.  Specific Request for Relief Pursuant to Sections 1507 and 1521 of the Bankruptcy Code Is Warranted and Appropriate**

21.    In addition to the relief automatically provided by section 1520 of the Bankruptcy Code upon recognition of a foreign main proceeding,[2] the Foreign Representative requests, in the event recognition of the Brazilian Proceeding is granted, additional relief and assistance pursuant to sections 1507 and 1521 of the Bankruptcy Code to further the goal of orderly administration of the Debtor's assets.

22.    Upon recognition of a foreign proceeding and at the request of a foreign representative, the Court may grant, with certain express exceptions not applicable here, "any appropriate relief," including any injunctive relief and "any additional relief that may be

---

[2]    Upon recognition of the Brazilian Proceeding as a foreign main proceeding, certain relief is automatically granted as a matter of right, including a stay that enjoins actions against the Debtor and otherwise protects the Debtor. *See* 11 U.S.C. § 1520. In particular, upon the Court's recognition of the Brazilian Proceeding as a foreign main proceeding, section 1520(a)(1) of the Bankruptcy Code triggers the automatic stay provisions of section 362 of the Bankruptcy Code with respect to the Debtor.

available to a trustee," provided that the Court determines that doing so is necessary to effectuate the purpose of chapter 15 and to protect the assets of the debtor or the interests of the creditors. 11 U.S.C. § 1521(a). Further, the Court may provide "additional assistance to a foreign representative." 11 U.S.C. § 1507(a). Accordingly, pursuant to sections 1507(a) and 1521(a)(7) of the Bankruptcy Code, the Foreign Representative requests that the Court assist in the implementation of the Plan Approval Order and the Brazilian Plan.

23.    Specifically, the Debtor seeks additional assistance from the Court in authorizing and directing the DTC and the Trustee to carry out any ministerial actions required of them pursuant to the Brazilian Plan, or that are necessary to consummate the terms of the Brazilian Plan, in accordance with section 1507 of the Bankruptcy Code. Neither the DTC nor the Trustee are subject to the direct jurisdiction of the Brazilian Court, and therefore, those entities are unable to act in support of the Brazilian Plan without authorization and direction from a United States court.

24.    As described in the Almeida Declaration, upon approval of the Order, the Debtor or Equatorial will pay the Trustee 17.5% of the claim attributable to the Unsecured Notes for distribution to the Noteholders (as defined in the Almeida Declaration) in exchange for the complete beneficial interest in the Unsecured Notes. The Debtor will then issue a certificated note to Equatorial in exchange for Equatorial's beneficial interest in the Unsecured Notes and the Unsecured Notes will be returned to the Trustee for cancellation. The Debtor, Equatorial, and the Trustee will enter into a supplemental indenture, which will, among other things, relieve the Trustee of any further obligations under the Indenture. To consummate the foregoing transactions, the Foreign Representative seeks assistance from the Court authorizing and

directing the Trustee (and to the extent necessary, the DTC as the record holder of the Unsecured

Notes) to take necessary administrative actions.

25.     Such requested assistance will give clear direction and authority under

United States law to the DTC and the Trustee to carry out the requirements of the Brazilian Plan

in accordance with Brazilian law, the Plan Approval Order of the Brazilian Court, and the wishes

of the requisite majority of the Debtor's unsecured creditors.  The requested assistance is

necessary to implement the Brazilian Plan, which provides for the just treatment of the Debtor's

creditors and equityholders as well as distributions to the Debtor's creditors in a manner similar

to that prescribed by the Bankruptcy Code, all in accordance with section 1507(b) of the

Bankruptcy Code.

26.     The Debtor also seeks a permanent injunction under section 1521 of the

Bankruptcy Code against any parties that may attempt to commence prepetition actions or claims

in the United States against the Debtor or its property, to the extent that such actions are not

already stayed upon recognition by sections 1520 and 362 of the Bankruptcy Code.  By granting

a permanent injunction against all parties from commencing or continuing any such actions in

the United States with the purpose of obtaining possession of, exercising control over, or

asserting claims against the Debtor or its property, the Court will cooperate with and provide

assistance to the Brazilian Court in providing for a fair and efficient administration of the

Debtor's restructuring in a single collective forum, the Brazilian Proceeding.  Such an injunction

would support implementation of the Plan Approval Order and the Brazilian Plan, and would

protect the interest of all of the Debtor's creditors in having claims against the Debtor and its

estate valued and paid on a consistent, non-discriminatory basis before the Brazilian Court.  If

such relief were not granted, the Brazilian Proceeding could be disrupted by uncoordinated

litigation and unilateral action of lone beneficial holders of Unsecured Notes in the United States, causing irreparable harm to the Debtor and its creditors.

27.     The standards, procedures, and limitations applicable to an injunction apply to relief sought under section 1521(a) of the Bankruptcy Code.  11 U.S.C. § 1521(e).  The relief requested is warranted under the Second Circuit standard for granting a permanent injunction.  That standard is essentially the same as that for a preliminary injunction, except rather than demonstrating a likelihood of success on the merits, a movant must actually succeed on the merits.  *See NextG Networks of N.Y., Inc. v. City of New York*, 2006 WL 538189, at *8 (S.D.N.Y. Mar. 6, 2006).  The Foreign Representative has every reason to believe that he will be successful in his request for recognition of the Brazilian Proceeding as a foreign proceeding and, in any event, such recognition will happen (if at all) simultaneously with or prior to the granting of any relief to the Foreign Representative pursuant to section 1521 of the Bankruptcy Code.

28.     Moreover, the injunctive relief requested is necessary "to prevent individual American creditors from abrogating to themselves property belonging to the creditors as a group."  *In re Banco Nacional de Obras y Servicios Publicos S.N.C.*, 91 B.R. 661, 664 (Bankr. S.D.N.Y. 1988); *see also In re Bird*, 222 B.R. 229, 233 (Bankr. S.D.N.Y. 1998) (finding, under former section 304(c), that the purpose of filing was to prevent local creditors from seeking piecemeal distribution of the foreign debtor's assets).  Courts have held that "the premature piecing out of property involved in a foreign liquidation proceeding constitutes irreparable injury."  *In re Rubin*, 160 B.R. 269, 283 (Bankr. S.D.N.Y. 1993) (*quoting In re Lines*, 81 B.R. 267, 270 (Bankr. S.D.N.Y. 1988)).  Actions by individual creditors of the Debtor at the expense of the rights of other creditors is exactly the kind of action that is prejudicial to all creditors and that section 1521(e) is intended to prevent.

29.     Irreparable harm also exists where the orderly determination of claims against a Debtor and the fair distribution of a Debtor's assets is disrupted.  *E.g.*, *Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713-14 (2d Cir. 1987); *Cunard S.S. Co. Ltd. v. Salen Reefer Servs. A.B.*, 773 F.2d 452, 458 (2d Cir. 1985) ("Unless all parties in interest, wherever they reside, can be bound by the arrangement which it is sought to have legalized, the scheme may fail.") (citing *Canada S. Ry. Co. v. Gebhard*, 109 U.S. 527, 539 (1883)); *In re MMG LLC*, 256 B.R. 544, 555 (Bankr. S.D.N.Y. 2000) ("As a rule . . . irreparable harm exists whenever local creditors of the foreign debtor seek to collect their claims or obtain preferred positions to the detriment of the other creditors.").  To allow creditors to litigate any claims they may allege against the Debtor in the United States would threaten the assets of the foreign estate and the success of the Foreign Proceeding, and would divert funds needed to maximize the value of the Debtor's estate for creditors, which courts have found to be a basis for irreparable harm to a debtor.  *See MMG LLC*, 256 B.R. at 555; *In re Gercke*, 122 B.R. 621, 626 (Bankr. D.D.C. 1991).

30.     Finally, the injunctive relief sought herein would not cause undue hardship or prejudice to the rights of any United States based creditors.  As demonstrated by the Almeida Declaration, implementation of the Brazilian Plan required the affirmative vote of a majority (in both number and amount) of the voting members of the unsecured claimant class.  The Noteholders, as unsecured creditors of the Debtor, are members of the unsecured claimant class. The Brazilian Plan received the affirmative votes of 71.35% in amount and 82.33% in number of the voting members of the unsecured claimant class.  The Brazilian Plan and voting procedures applied uniformly to all of the Debtor's creditors wherever they reside, including all of the holders of Unsecured Notes, who were provided with the opportunity to participate in the Brazilian Plan approval and voting process in accordance with Brazilian law.  In short, due

process has been, and continues to be, preserved for all stakeholders in connection with the Brazilian Proceeding.  The injunctive relief sought herein does nothing more than give effect to the Plan Approval Order and the Brazilian Plan, and will not cause any undue hardship or prejudice to the rights of any of the Debtor's creditors in the United States or elsewhere.

**C. Recognizing the Brazilian Proceeding As a Foreign Main Proceeding and Granting the Other Relief Requested Herein Is Consistent with the Purpose of Chapter 15 and United States Public Policy**

31.    Section 1506 of the Bankruptcy Code provides that nothing in chapter 15 shall prevent the Court from refusing to take an action otherwise required therein if such action would be manifestly contrary to the public policy of the United States.  11 U.S.C. § 1506.  The Foreign Representative submits that the relief requested herein is not manifestly contrary to, and is consistent with, public policy of the United States.

32.    It is well established that one of the fundamental goals of the Bankruptcy Code is the centralization of disputes involving the debtor.  *See, e.g., In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 989 (2d Cir. 1990) ("The Bankruptcy Code 'provides for centralized jurisdiction and administration of the debtor, its estate and its reorganization in the Bankruptcy Court . . . .'") (internal citations omitted).  Indeed, as one court has noted, "the firm policy of American courts is the staying of actions against a corporation which is the subject of a bankruptcy proceeding in another jurisdiction."  *Cornfeld v. Investors Overseas Servs., Ltd.*, 471 F. Supp. 1255, 1259 (S.D.N.Y. 1979) (recognizing that a Canadian liquidation proceeding would not violate laws or public policy of New York or the United States).

33.    The Brazilian Proceeding is similar to cases under chapter 11 of the Bankruptcy Code because it provides for a centralized process to assert and resolve claims against an estate and to provide distributions to creditors in order of priority.  Recognizing the Brazilian Proceeding and enjoining certain actions or proceedings with respect to the Debtors

and their assets will assist the orderly administration of the Debtor's assets.  Such orderly

administration is consistent with the public policy of the United States, as embodied in the

Bankruptcy Code.  Absent the relief requested, there is a possibility that certain United States

based holders of Unsecured Notes could attempt to circumvent the Brazilian Proceeding by

commencing actions against the Debtor in the United States, notwithstanding any stay order

issued by the Brazilian Court.  Further, it is likely that the Trustee and the DTC would be

unwilling or unable to fulfill the ministerial duties necessary to consummate the Brazilian Plan

for fear that they may not have independent authority to do so under the Indenture.  This could

result in unnecessary enforcement costs or the outright failure of the Brazilian Plan, which has

been approved in accordance with the Bankruptcy and Business Recovery Law.  Avoiding such

potential outcomes through the recognition of the Brazilian Proceeding and enforcement of the

Plan Approval Order and the Brazilian Plan in the United States is consistent with United States

public policy and promotes the public policies embodied in the Bankruptcy Code.

34.     Further, recognition of the Brazilian Proceeding is consistent with the

purpose of chapter 15 and the UNCITRAL Model Law on Cross-Border Insolvency.

Section 1501(a) of the Bankruptcy Code provides, in pertinent part, that:

> The purpose of this chapter is to incorporate the Model Law on
> Cross-Border Insolvency so as to provide effective mechanisms for
> dealing with cases of cross-border insolvency with the objectives of -
>
> (1)     cooperation between -
>
> * * *
>
>> (A)     the courts and other competent authorities of foreign
>> countries involved in cross-border insolvency cases;
>
> * * *

(2)      fair and efficient administration of cross-border insolvencies that protects the interests of all creditors, and other interested entities, including the debtor; [and]

(3)      protection and maximization of the value of the debtor's assets.

11 U.S.C. § 1501.

35.      The relief requested by the Foreign Representative is consistent with the objectives of chapter 15.  First, recognition of the Brazilian Proceeding would foster cooperation between courts in Brazil and the United States with respect to the Debtor's restructuring proceeding.  By granting recognition to the Brazilian Proceeding and enforcing the Plan Approval Order and the Brazilian Plan in the United States, the Court can effectively assist the Brazilian Court in the orderly administration of the Debtors' assets.  The Debtor's creditors would be enjoined from commencing or continuing actions against the Debtor or its assets in the United States, thereby facilitating the uniform resolution of claims against the Debtors.

36.      Second, recognition of the Brazilian Proceeding would promote the fair and efficient administration of a cross-border reorganization procedure that protects the interests of all creditors and interested entities.  By recognizing the Brazilian Proceeding and granting the relief requested, the process of resolving claims against the Debtors would be centralized in Brazil.  Claims would be treated in accordance with the Brazilian Plan, which comports with Brazilian law, which itself is similar in relevant respects to United States law, and any disputes would be subject to the uniform jurisdiction of one tribunal, the Brazilian Court.  If creditors' actions with respect to the Debtor in the United States are not effectively stayed, the uniform and orderly voluntary administration of the Debtor's assets in the Brazilian Proceeding will be jeopardized.  Accordingly, the relief requested would further the objectives of chapter 15 by assisting the orderly voluntary administration of the Debtor in the Brazilian Proceeding.

## Notice

37.     Notice of this Motion has been provided to:  (a) all persons or bodies authorized to administer foreign proceedings of the Debtor; (b) Chadbourne & Parke LLP, on behalf of the Trustee; (c) the DTC, (d) Bingham McCutchen LLP, on behalf of the *ad hoc* committee of holders of the Unsecured Notes; and (e) the Office of the United States Trustee for the Southern District of New York.  The Foreign Representative proposes to further notify creditors and parties in interest of the filing of the chapter 15 petition and the Foreign Representative's request for entry of the Order in the form and manner set forth in the *Foreign Representative's Motion for Order Scheduling Hearing and Specifying the Form and Manner of Service of Notice*, which was filed concurrently herewith.  In light of the relief requested herein, the Foreign Representative respectfully submits that no other or further notice of this Motion is necessary under the circumstances.

## No Prior Request

38.     No previous request for the relief requested herein has been made to this or any other court.

## Conclusion

WHEREFORE, the Foreign Representative respectfully requests that the Court:

(a) enter the Order, upon notice and a hearing, substantially in the form attached hereto as

Exhibit A, and (b) grant such other and further relief as may be just and proper.

Dated:   New York, New York         Respectfully submitted,
      November 9, 2012

                                      SHEARMAN & STERLING LLP

                                      /s/ Douglas P. Bartner
                                      Douglas P. Bartner
                                      Robert A. Britton
                                      599 Lexington Avenue
                                      New York, New York 10022
                                      Telephone:  (212) 848-4000
                                      Facsimile:  (646) 848-8174

                                      *Attorneys for the Foreign Representative*

## EXHIBIT A

**Proposed Order**

SHEARMAN & STERLING LLP
Douglas P. Bartner
Robert A. Britton
599 Lexington Avenue
New York, NY 10022
Telephone: (212) 848-4000

*Attorneys for the Foreign Representative*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
In re                                                                         :    **Chapter 15**
                                                                                :
**CENTRAIS ELÉTRICAS DO PARÁ S.A. –** *EM*        :    **Case No. 12-14568 (__)**
*RECUPERAÇÃO JUDICIAL,* [1]
                                                                                :
      **Debtor in a Foreign Proceeding.**                   :
                                                                                :
---------------------------------------------------------------- x

**ORDER GRANTING RECOGNITION OF FOREIGN MAIN PROCEEDING AND**
**CERTAIN RELATED RELIEF**

Upon the motion (the "**Motion**")[2] of Mauro Chaves de Almeida, in his capacity as

the authorized foreign representative (the "**Foreign Representative**") for Centrais Elétricas do

Pará S.A. – *em recuperação judicial* (the "**Debtor**") in connection with the ongoing case of

judicial reorganization number 0005939-47.2012.814.0301 (the "**Brazilian Proceeding**")

commenced in the Federative Republic of Brazil pursuant to Federal Law 11.101 of February 9,

2005 pending before the Thirteenth Civil Court of Belém, State of Pará (the "**Brazilian Court**"),

pursuant to sections 1504, 1507, 1509, 1517, 1520, 1521, and 105(a) of title 11 of the United

States Code, as amended from time to time (the "**Bankruptcy Code**") for entry of an Order

---

[1]    The last four digits of the Debtor's Brazilian Corporate Taxpayer Registration Number are 01-80.  The
        Debtor's executive headquarters is located at Rodovia Augusto Montenegro s/n, Km 8,5 – CEP 68823-010,
        Belém, Pará, Brazil.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings given to them in the
        Motion.

(this "**Order**") after notice and a hearing, (a) granting the verified petition in this case and

recognizing the Brazilian Proceeding as a foreign main proceeding pursuant to section 1517 of

the Bankruptcy Code, (b) giving full force and effect in the United States to the Brazilian Court's

Plan Approval Order and the Brazilian Plan, which was approved by the Plan Approval Order,

(c) permanently enjoining all parties from commencing or taking any action in the United States

to obtain possession of, exercise control over, or assert claims against the Debtor or its property,

(d) authorizing and directing the DTC and the Trustee to take any and all ministerial actions

necessary to give effect to the terms of the Brazilian Plan, (e) relieving the Trustee of any further

obligations under the Indenture upon the consummation of all actions required prior to and on

the Investment Date, and (f) granting such other and further relief as the Court deems just and

proper; and it appearing that this Court has jurisdiction to consider the Motion pursuant to

sections 157 and 1334 of title 28 of the United States Code, and the Amended Standing Order of

Reference from the United States District Court for the Southern District of New York dated as

of January 31, 2012; and this Court having reviewed the Motion, the Petition for Recognition,

the Almeida Declaration, and the statements of counsel with respect to the Motion at a hearing

before this Court (the "**Hearing**"); and appropriate and timely notice of the filing of the Motion

and the Hearing having been given; and no other or further notice being necessary or required;

and this Court having determined that the legal and factual bases set forth in the Motion, the

Petition for Recognition, the Almeida Declaration, and all other pleadings and papers in this case

establish just cause to grant the relief ordered herein, and after due deliberation therefor;

**THIS COURT HEREBY FINDS AND DETERMINES THAT:**

      A.      The findings and conclusions set forth herein constitute this Court's

findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy

Procedure (the "**Bankruptcy Rules**"), made applicable to this proceeding pursuant to

2

Bankruptcy Rule 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference from the United States District Court for the Southern District of New York dated as of January 31, 2012.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).  Venue for this proceeding is proper before this Court pursuant to 28 U.S.C. § 1410.

C.    The Foreign Representative is the duly appointed "foreign representative" of the Debtor within the meaning of section 101(24) of the Bankruptcy Code.

D.    This chapter 15 case was properly commenced pursuant to sections 1504, 1509, and 1515 of the Bankruptcy Code.

E.    The Foreign Representative has satisfied the requirements of section 1515 of the Bankruptcy Code and Bankruptcy Rule 2002(q).

F.    The Brazilian Proceeding is a "foreign proceeding" pursuant to section 101(23) of the Bankruptcy Code.

G.    The Brazilian Proceeding is entitled to recognition by this Court pursuant to section 1517 of the Bankruptcy Code.

H.    The Plan Approval Order should be given full force and effect in the United States.

I.    The State of Pará in the Federative Republic of Brazil is the center of main interests of the Debtor, and accordingly the Brazilian Proceeding is a "foreign main proceeding"

3

as defined in section 1502(4) of the Bankruptcy Code, and is entitled to recognition as a foreign main proceeding pursuant to section 1517(b)(1) of the Bankruptcy Code.

J.      The Foreign Representative and the Debtor, as applicable, are entitled to all the automatic relief available pursuant to section 1520 of the Bankruptcy Code without limitation.

K.      The Foreign Representative and the Debtor, as applicable, are further entitled to the additional assistance and discretionary relief requested in the Motion pursuant to sections 1507 and 1521(a) of the Bankruptcy Code.

L.      Absent permanent injunctive relief, the Brazilian Proceeding and the Debtor's efforts to consummate the Brazilian Plan may be thwarted by the actions of certain creditors, a result inimical to the purposes of chapter 15 of the Bankruptcy Code as set forth, *inter alia*, in section 1501(a) of the Bankruptcy Code.  Such actions could threaten, frustrate, delay, and ultimately jeopardize the Brazilian Proceeding and implementation of the Brazilian Plan.

M.      The relief sought by the Motion will not cause undue hardship or inconvenience to any party in interest and, to the extent that any hardship or inconvenience may result to such parties, it is outweighed by the benefits of the requested relief to the Foreign Representative, the Debtor, its estate, and all of its creditors.

N.      The relief granted herein is necessary and appropriate, in the interests of the public and international comity, consistent with the public policy of the United States, and warranted pursuant to sections 1504, 1507, 1509, 1517, 1520, 1521, and 105 of the Bankruptcy Code.

4

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND
DECREED THAT:**

1.      The Petition for Recognition and the Motion are granted.

2.      The Brazilian Proceeding is granted recognition as a foreign main
proceeding pursuant to section 1517 of the Bankruptcy Code.

3.      The Foreign Representative is the duly appointed foreign representative of
the Debtor within the meaning of section 101(24) of the Bankruptcy Code and is authorized to
act on behalf of the Debtor in this chapter 15 case.

4.      The Plan Approval Order and the Brazilian Plan, including any
amendments or modifications thereto, and subject to all limitations and conditions precedent set
forth therein, are hereby recognized and given full force and effect in the United States.

5.      All relief afforded foreign main proceedings pursuant to section 1520 of
the Bankruptcy Code is hereby granted to the Brazilian Proceeding, the Debtor, and the Foreign
Representative, as applicable.

6.      Subject to sections 1520 and 1521 of the Bankruptcy Code, the Brazilian
Proceeding, the Brazilian Plan, all orders of the Brazilian Court approving the same, and the
transactions consummated or to be consummated thereunder, shall be granted comity and given
full force and effect in the United States to the same extent that they are given effect in the
Federative Republic of Brazil, and each is binding on all creditors of the Debtor, including all
Noteholders (as defined in the Almeida Declaration), as well as the DTC and the Trustee, and
any of their successors or assigns.

NYDOCS03/954820.8A

7.      All entities (as that term is defined in section 101(15) of the Bankruptcy Code), other than the Foreign Representative and his expressly authorized representatives and agents, are hereby enjoined from:

a.      execution against any of the Debtor' assets;

b.      the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, arbitral, or other action or proceeding, or to recover a claim, which in either case in any way relates to, or would interfere with, the administration of the Debtor' estates in the Brazilian Proceeding or the solicitation, implementation, or consummation of the transactions contemplated by the Brazilian Plan, including without limitation any and all unpaid judgments, settlements, notes, or otherwise against the Debtor in the United States;

c.      taking or continuing any act to create, perfect, or enforce a lien or other security interest, set-off, or other claim against the Debtor or any of its property;

d.      transferring, relinquishing, or disposing of any property of the Debtor to any entity (as that term is defined in section 101(15) of the Bankruptcy Code) other than the Foreign Representative;

e.      commencing or continuing an individual action or proceeding concerning the Debtor' assets, rights, obligations, or liabilities to the extent they have not been stayed pursuant to section 1520(a) and 362 of the Bankruptcy Code; and

*provided*, in each case, that such injunction shall be effective solely within the territorial jurisdiction of the United States.

8.      All entities are permanently enjoined from taking any action within the territorial jurisdiction of the United States that is in contravention of or that is inconsistent with the Brazilian Plan.

9.      With respect to claims based upon, concerning or relating in any way to the Unsecured Notes or the solicitation and/or implementation of the Brazilian Plan, all persons and entities are enjoined and restrained from taking any action within the territorial jurisdiction of the United States (including, without limitation, commencing or continuing any action or legal proceeding (including, without limitation, bringing suit in any court, arbitration, mediation, or any judicial or

6

quasi-judicial, administrative or regulatory action, proceeding or process whatsoever), including by way of counterclaim (and from seeking discovery of any nature related thereto)) that would interfere with or impede the administration, implementation and/or consummation of the Brazilian Plan and/or the terms of this Order against the Debtor, the Foreign Representative, the Trustee, or the DTC.

10.     Notwithstanding anything to the contrary contained herein, this Order shall not be construed as enjoining the police or regulatory act of a governmental unit, including a criminal action or proceeding, to the extent not stayed pursuant to section 362 of the Bankruptcy Code or staying the exercise of any rights that section 362(o) of the Bankruptcy Code does not allow to be stayed.

11.     The Foreign Representative is hereby authorized to apply to this Court to examine witnesses, take evidence, seek production of documents, and deliver information concerning the assets, affairs, rights, obligations, or liabilities of the Debtor, as and to the extent that such information is required in connection with the Brazilian Proceeding.

12.     The DTC and the Trustee are hereby authorized and directed to take any ministerial actions that may be necessary to consummate the transactions contemplated by the Brazilian Plan, including the execution by the Trustee of the Supplemental Indenture among the Trustee, the Debtor, and Equatorial.

13.     Upon the consummation of the transactions necessary to consummate the distribution to the Noteholders pursuant to the Brazilian Plan, the Trustee shall be relieved of any further obligations under the Indenture.

14.     Nothing in this Order shall affect the rights of the Trustee to collect its fees and expenses from the Noteholders or its lien on any payments made with respect to the

NYDOCS03/954820.8A

Unsecured Notes; it being acknowledged that the Trustee intends to exercise its rights under the

Indenture to apply payments received under the Brazilian Plan to first pay the fees and expenses

of its counsel and any other professionals retained by it to the extent such payments exceed the

amounts paid to it in respect of such fees and expenses hereunder.  As a condition to the

Trustee's taking the action contemplated to effectuate the Brazilian Plan, the Debtor, Equatorial,

and/or their respective designees shall, within four business days of the entry of this Order, (a)

pay the reasonable and documented fees and expenses incurred by the Trustee through and

including the date of this Order, and (b) reimburse the Trustee upon its request for all reasonable

and documented additional expenses and disbursements incurred or made by the Trustee

(including the compensation and expenses, advances, and disbursements of its counsel and of all

Persons not regularly in its employ) when and as would be required by the terms of the Indenture

if it had not terminated, discharged, supplemented or satisfied (*provided that* amounts paid to the

Trustee pursuant to parts (a) and (b) of this Paragraph 14 shall not exceed $700,000 in the

aggregate).  In addition, the Debtor, Equatorial, and/or their respective designees shall, within

four business days of the entry of this Order, pay the reasonable and documented (i) fees and

expenses of the advisors to the *ad hoc* group of Noteholders, and (ii) travel expenses of members

of the *ad hoc* group of Noteholders (*provided that* amounts paid pursuant to parts (i) and (ii) of

this Paragraph 14 shall not exceed $1,220,000 in the aggregate).

15.     The Foreign Representative, the Debtor, and/or each of their respective

successors, agents, representatives, advisors, and counsel shall be entitled to the protections

contained in sections 306 and 1510 of the Bankruptcy Code.

16.     Notwithstanding any provision in the Bankruptcy Rules to the contrary:

(a) this Order shall be effective immediately and enforceable upon entry; (b) the Foreign

NYDOCS03/954820.8A

Representative is not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Order; and (c) the Foreign Representative is authorized and empowered, and may in his discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of this Order.

17.    A copy of this Order, confirmed to be true and correct, shall be served, within seven business days of entry of this Order, by facsimile, electronic mail, or overnight express delivery, upon all persons or bodies authorized to administer foreign proceedings of the Debtor, any parties to litigation pending in the United States in which the Debtor was a party at the time of the filing of the Petitions for Recognition, the Office of the United States Trustee for the Southern District of New York, and such other entities as this Court may direct.  Such service shall be good and sufficient service and adequate notice for all purposes.

18.    This Court shall retain jurisdiction with respect to the enforcement, amendment, or modification of this Order and any requests for additional relief or any adversary proceeding brought in and through this case.

Dated:  New York, New York
        _____, 2012


                        _____
                        UNITED STATES BANKRUPTCY JUDGE

9